UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LIN GAO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:13-CV-1956-SPM |
| | ) | |
| ST. LOUIS LANGUAGE IMMERSION | ) | |
| SCHOOLS, INC. and LYDIA CHEN, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion for Summary Judgment filed by Defendants St. Louis Language Immersion Schools ("SLLIS") and Lydia Chen ("Chen"). (Doc. 82). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. 42). For the reasons stated below, Defendants' motion will be granted.

## I.   FACTUAL BACKGROUND

SLLIS is a non-profit organization that operates charter public schools involving language immersion programs, including The Chinese School. (Doc. 83-1, at p.2). Chen is the Head of The Chinese School. (Chen. Aff., Doc. 83-3, ¶ 1). Most of the staff members of The Chinese School are over the age of 40, including Chen. (Chen Aff. ¶¶ 4, 7, 9). Approximately 70% are Chinese; most of the others (including Chen) are Taiwanese. (Chen Aff. ¶¶ 4, 6, 8).

Plaintiff is a United States citizen who immigrated to the United States from mainland China. (2d Am. Compl. ¶ 8). She has a master's degree in physical education. (Plaintiff's resume, Doc. 83-5, at p. 4). She was 41 or 42 years old at the time of the events relevant to this lawsuit. (Doc. 105-1, at p. 5).

In late 2012, and again in early 2013, Plaintiff applied for a position at The Chinese School for the part-time position of Elementary Specialist in Physical Education ("P.E."). (Doc. 104, ¶ 12; Doc. 105-1, at p. 6; Chen Aff. ¶ 10; Job Description, Doc. 83-6, at p. 4). On March 21, 2013, Chen hosted a school tour or group interview for those who had applied for teaching positions at The Chinese School, including Plaintiff. (Chen. Aff. ¶ 11-12). During the tour, Chen told the applicants that they were welcome to visit, observe, or volunteer at the school. (Chen. Aff. ¶ 13). Later that day, Plaintiff wrote Chen an email to express her interest in the position and to offer some ideas for the P.E. class. (Email from Lin Gao to Lydia Chen, Doc. 83-3, at p. 8). Plaintiff emailed and called Chen to arrange a time to observe classes, and they arranged a time. (Email from Lydia Chen to Lin Gao, Doc. 83-3, at p. 14; Chen Aff. ¶ 16).

Plaintiff observed and volunteered at classes at The Chinese School on April 12, April 19, April 26, and May 3, 2013. (Chen Aff. ¶¶ 17-18). Plaintiff alleges that at some point after the group interview but before this volunteer work was completed, Chen promised Plaintiff, orally and in writing, that Chen would offer Plaintiff the P.E. teacher job, at a salary of $16,000, if Plaintiff completed the obligatory "volunteer" work. (2d Am. Compl. ¶ 11).[1] To support this allegation, Plaintiff submits a paper, undated and in Chen's handwriting, that contains various notes that appear to be related to job descriptions, hours, and salary amounts. (Doc. 105-1, at p. 13). For example, at the top, the paper states, "PE→6FYE→0.2 fte → 10 hrs [Chinese characters] $8000." It also includes a line stating, "Morning Mosaic → M→F = 6:30-10:30 0.5 fte→$8000. It also includes a notation that "1 hrs = $20." The number $16,000 also appears on the paper, though it is unclear what words it is connected to.

---

[1] Plaintiff makes allegations similar to those in Second Amended Complaint in her responses to Defendants' motion for summary judgment. For simplicity, the Court cites only to the Second Amended Complaint when discussing allegations that are not supported by evidence in the record.

Plaintiff alleges that during this volunteer work, Plaintiff disclosed to Chen that she was over 40 years old. She alleges that Chen stated that a woman over 40 who had previously had a child did not have the physical conditioning to complete the daily rigors of the P.E. teacher position. (2d Am. Compl. ¶¶ 15-17). However, Chen states in her affidavit that she did not know Plaintiff's age at any time during Plaintiff's volunteer work and application process. (Chen Aff. ¶ 34).

On May 3, 2013, Plaintiff and Chen scheduled Plaintiff's teaching demonstration for on or around May 17, 2013, and she performed the demonstration. (Chen Aff. ¶¶ 19-20). It met Chen's expectations. (Chen Aff. ¶ 21). Plaintiff also volunteered as a Tai Chi and/or Wushu performer at events on May 18 and June 6, 2013. (Chen Aff. ¶¶ 23-25). Plaintiff alleges that she requested payment for these performances but was instead assured that the P.E. teacher position would be given to her. (2d Am. Compl. ¶ 20).

Plaintiff alleges that on the car ride to the June 6, 2013 performance, Chen stated that some SLLIS teachers were from mainland China, where the people were poor and low class. (2d Am. Compl. ¶ 21).

On June 6, 2013, Chen and Plaintiff met to discuss the position at SLLIS. (Chen Aff. ¶ 26). The parties' accounts of this meeting differ significantly. Plaintiff alleges that during the meeting, Chen informed Plaintiff that the P.E. teacher position was still open to her but that its salary would be only $6,000 annually, not the $16,000 previously promised. (2d Am. Compl. ¶ 23). Plaintiff alleges that she was astonished at the change in salary but accepted the position anyway. (2d Am. Compl. ¶ 24). She cites evidence showing that in the 2012-2104 time frame, she held other jobs at which she earned less than $6,000 per year. (Doc. 105-1, at p. 4; Doc. 23-2). In contrast, in Chen's account of this meeting, Chen states that she "did not offer Gao a

position at SLLIS."[2] (Chen Aff. ¶ 30). She states that she told Plaintiff that the salary for the position was set at $6,000 annually and that the salary amount was not flexible. (Chen Aff. ¶¶ 27-29). Chen says that Plaintiff then told Chen that she could not continue to consider the position, that the salary was too low, and that there was no way she could live off of $6,000 per year. (Chen Aff. ¶ 30). Chen further states that Plaintiff requested that Chen stop processing her job application at that time. (Chen Aff. ¶ 31).

Later on June 6, 2013, Chen and Plaintiff spoke by phone. (Chen Aff. ¶ 32). Plaintiff alleges that Chen told Plaintiff that Chen had changed her mind and decided not to hire Plaintiff. (2d Am. Compl. ¶ 25). Plaintiff alleges that when she asked why, Chen indicated that Plaintiff was unsuitable for the P.E. teacher position and should look for other jobs because of her age. (2d Am. Compl. ¶ 25). In contrast, Chen states in her affidavit that she reiterated in this phone call that the salary was fixed and that there was no room for negotiation, and Plaintiff again stated that she could not consider the job at that salary. (Chen Aff. ¶ 32). Chen states that she told Plaintiff that she would stop processing Plaintiff's job application, and Plaintiff agreed and told Chen that she would recommend someone for the position. (Chen Aff. ¶ 32).

After June 6, 2013, Chen continued to seek applications for the position, indicating in her email seeking applicants that the job was "part time work" and "paid $6000 annual salary." (Chen Aff. ¶ 35; Email from Lydia Chen, Doc. 83-11, at pp. 2-3). Chen states in her affidavit that SLLIS never filled the position for the 2013-14 school year.[3] (Chen Aff. ¶ 36).

---

[2] Inexplicably, Defendants state in their Brief and Memorandum of Law in Support of Summary Judgment that SLLIS "extended [Gao] an offer of employment," Doc. 84, at p.5, despite the fact that their Statement of Uncontroverted Facts and Chen's affidavit plainly say the opposite. The Court will treat as true the statement that is supported by the evidence.

[3] Again, this evidence conflicts with a representation Defendants made in another filing. On June 27, 2014—two months before Defendants filed Chen's affidavit—Defendants represented to the Court in a response to Plaintiff's Motion to Appoint Counsel that "SLLIS actually hired another female, Chinese candidate for the position that Gao applied for, which demonstrates Defendants'

## II. PROCEDURAL BACKGROUND

Plaintiff filed this action, *pro se*, on October 1, 2013, and has since filed two amended complaints. In her Second Amended Complaint, filed on July 7, 2014, she asserts seven claims against Defendants SLLIS and Chen: (I) age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*; (II) racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; (III) age discrimination in violation of the Missouri Human Rights Act, Mo. Rev. Stat. § 213.055; (IV) racial discrimination in violation of the Missouri Human Rights Act, Mo. Rev. Stat. § 213.055; (V) breach of contract; (VI) fraudulent inducement; and (VII) unjust enrichment. Defendants filed an answer to the Second Amended Complaint.

On April 23, 2014, the Court appointed counsel for Plaintiff through the Court's *pro bono* volunteer lawyer program. Plaintiff's appointed counsel met with Plaintiff and also found a Mandarin-speaking associate from his firm to assist in his communications with Plaintiff. However, Plaintiff soon notified the Court of various complaints about her appointed counsel, principally related to his request that she sign his firm's standard engagement letter. At a status conference before the Court, it became apparent that Plaintiff did not trust her appointed counsel and believed that he would seek payment from her for his services, despite his and the Court's representations to the contrary. Plaintiff's counsel eventually moved to withdraw, and the Court granted the motion on June 23, 2014. The Court has denied Plaintiff's subsequent motions seeking appointment of counsel, and Plaintiff is currently proceeding *pro se*.

---

nondiscriminatory intentions." (Doc. 58). On August 27, 2014, Defendants stated in their Brief and Memorandum of Law in Support of Summary Judgment, "It is undisputed that SLLIS did not hire anyone for the position that Gao was seeking." (Doc. 84, at p. 6). Defendants have not attempted to explain this discrepancy, even after Plaintiff pointed it out in her response.

On August 27, 2014, Defendants filed the instant motion for summary judgment. After Plaintiff filed responses that did not comply with Eastern District of Missouri Local Rule 7-4.01(E) or with Rule 56(c) of the Federal Rules of Civil Procedure (Docs. 85, 100), the Court entered orders informing her of her obligations under Local Rule 7-4.01 and Federal Rule of Civil Procedure 56(c), including her obligation to support her assertions with citations to materials in the record such affidavits, depositions, documents, stipulations, admissions, interrogatory answers, or other materials. (Docs. 87, 102). Eventually, Plaintiff filed three documents in opposition to Defendants' motion: a response to Defendants' Statement of Uncontroverted Facts (Doc. 104); a response to Chen's affidavit (Doc. 107); and a response to Defendants' Brief and Memorandum of Law (Doc. 115). In these documents, Plaintiff responds to each of Defendants' assertions with a combination of arguments, factual assertions supported by documents in the record, and factual assertions unsupported by any citations to the record.

## III. DISCUSSION

### a. Legal Standard for Summary Judgment

The Court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial responsibility of informing the court of the basis of its motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The defendant may discharge this burden by showing

that "there is an absence of evidence to support the nonmoving party's case." *Id.* 325. If the moving party meets this initial burden, the non-moving party must then set forth affirmative evidence from which a jury might return a verdict in his or her favor. *Anderson*, 477 U.S. at 256-57. "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007).

In considering a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in the nonmovant's favor. *Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004). The court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

### b. Count I: Age Discrimination Under the ADEA

The Age Discrimination in Employment Act ("ADEA") protects individuals aged 40 and over by prohibiting employers from discriminating against such individuals on the basis of their age. 29 U.S.C. § 623(a). Plaintiff asserts that Defendants discriminated against her on the basis of her age when (1) they reduced her promised salary from $16,000 to $6,000, and (2) they ultimately decided not to hire her at all.

To establish a claim under the ADEA, Plaintiff "'must prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the but-for cause of the challenged employer decision.'" *Tramp v. Associated Underwriters, Inc.*, 768 F.3d 793, 800 (8th Cir. 2014) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009)). Direct evidence is "'evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion

actually motivated the adverse employment action.'" *Holmes v. Trinity Health*, 729 F.3d 817, 821 (8th Cir. 2013) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011)). Where the plaintiff relies on indirect evidence, "the court analyzes her claim under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 515 (8th Cir. 2011).

This case arguably involves both direct and indirect evidence of discrimination, so the Court will discuss both.

### 1.    Direct Evidence

Defendants argue that Plaintiff cannot show any direct evidence of discriminatory animus motivating Chen's decision to offer Plaintiff only a $6,000 salary or Chen's ultimate failure to hire Plaintiff. They point to (1) Chen's affidavit stating that Chen herself and most of the employees of SLLIS were as old as or older than Plaintiff; (2) Chen's affidavit stating that Chen was unaware of Plaintiff's age during the relevant time frame; and (3) the lack of any evidence of discriminatory animus in the record. In her response, Plaintiff asserts that Chen made various negative statements about her ability to perform as a P.E. teacher at her age, including a statement in which Chen explicitly told her that the reason Chen was not hiring her was because of her age. (Doc. 115, at p. 23; 2d Am. Compl. ¶¶ 16-17, 25).

Chen's alleged statement that she was not hiring Plaintiff because of her age, if supported by evidence, would constitute direct evidence of discriminatory animus that motivated a decision not to hire Plaintiff. However, Plaintiff cites no evidence to support this allegation, nor has she submitted the allegation in a verified complaint.[4] The unsworn and unsupported allegations made in Plaintiff's unverified complaint and repeated in her response to Defendants' motion do not

---

[4] The Eighth Circuit has held that a *pro se* plaintiff's *verified* complaint is the equivalent of an affidavit for summary judgment purposes. *See Watson v. Jones*, 980 F.2d 1165, 1166 (8th Cir. 1992); *Williams v. Adams*, 935 F.2d 960, 961 (8th Cir. 1991).

constitute competent evidence that can be used to defeat a motion for summary judgment. *See Risdal v. Nixon*, ---F. App'x. ----, 2014 WL 5471985, at *1 (8th Cir. Oct. 30, 2014) (holding that the district court erred by considering a *pro se* plaintiff's unsworn statements, made at a telephone hearing, in denying the defendants' motion for summary judgment); *Tweeton v. Frandrup*, 287 F. App'x 541, 541 (8th Cir. 2008) (stating that to defeat summary judgment, the plaintiff "was required to offer evidence countering defendants' supporting affidavits and other evidence" and noting that "because his complaint was unverified, it could not be considered such evidence"); *Beyer v. Firstar Bank, N.A.*, 447 F.3d 1106, 1108 (8th Cir. 2006) (affirming grant of summary judgment where the plaintiff relied on an unverified complaint and did not submit an affidavit or any evidence from which a reasonable jury could conclude that he had shown one of the elements of his claims); *Metzsh v. Avaya, Inc.*, 159 F. App'x 736, 737 (8th Cir. 2005) ("[The *pro se* plaintiff's] repeated references on appeal to her unverified complaint are unavailing, because only a verified complaint is the equivalent of an affidavit for purposes of summary judgment."); *Williams v. Donahoe*, No. 4:13–CV–1150 CAS, 2014 WL 6083133, at *3 (Nov. 13, 2014) (refusing to consider plaintiff's unsworn statements in a complaint in assessing whether there was evidence of age discrimination for purposes of summary judgment).

Plaintiff does cite to documentary evidence that suggests that she submitted documents revealing her age to SLLIS at some point before she was interviewed.[5] However, even assuming that this evidence establishes a factual dispute regarding whether Chen knew about Plaintiff's age, it is not sufficient to create a genuine issue of material fact regarding whether Chen had any

---

[5] Plaintiff has cited an email showing that in late 2012, SLLIS informed her that her application would not be complete and the school would not consider her for an interview until her university transcripts had been mailed to the school. (Doc. 105-1, at p. 6). Some of Plaintiff's university transcripts contain her date of birth. (Doc. 105-1, at p. 5). It is unclear whether or when those transcripts were sent to SLLIS, and it is unclear who at SLLIS saw them.

age-related animus or whether Chen's knowledge of Plaintiff's age played any role in any employment-related decisions. Moreover, evidence showing that Chen knew about Plaintiff's age before her interview is inconsistent with Plaintiff's claim that Chen interviewed her, offered her the job, and *then* learned her age, reduced her salary offer, and revoked her job offer.

In sum, Plaintiff has failed to present any direct evidence from which a reasonable factfinder could conclude that discriminatory animus based on her age was a but-for cause of, or even a factor contributing to, any adverse employment action against Plaintiff.

### 2. Indirect evidence

The Court will next consider whether Plaintiff can show discrimination through indirect evidence. To establish a prima facie case of age discrimination under the ADEA, a plaintiff must show (1) that she is over 40; (2) that she was qualified for the position; (3) that she "was not hired" or "suffered an adverse employment action"; and (4) that a younger person was hired for the position or was treated more favorably than the plaintiff. *See Tusing*, 639 F.3d at 515; *Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 719 (8th Cir. 2012). Once the plaintiff establishes a prima facie case of discrimination, a presumption of unlawful discrimination arises, and the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for its actions." *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 611 (8th Cir. 2014) "If the employer carries its burden, the presumption is eliminated and the burden shifts back to the employee, who must then prove the employer's asserted reason was merely pretext for discrimination." *Id.* "To survive summary judgment, an employee must both discredit the employer's articulated reason and demonstrate the circumstances permit a reasonable inference of discriminatory animus." *Id.* (quotation marks omitted). "Ultimately, the employee must show that age was the 'but-for' cause of the adverse employment action." *Id.*

The question of whether Plaintiff has established a prima facie case is significantly complicated by inconsistencies in Defendants' representations to this Court concerning whether SLLIS offered Plaintiff the job and whether SLLIS hired anyone else to fill the job Plaintiff applied for.[6] Rather than attempting to resolve these inconsistencies, the Court will assume, without deciding, that Plaintiff established the elements of the prima facie case and that the burden shifted to Defendants to articulate a legitimate, non-discriminatory reason for the complained-of employment decisions (offering Plaintiff only $6,000 instead of $16,000 and ultimately not hiring her at all). Defendants have satisfied that burden. According to Chen's affidavit, the salary for the part-time P.E. teacher position was set at $6,000 and was not flexible. That statement is supported by an email showing that Chen quoted the $6,000 salary amount when soliciting applications from others for the position. The fact that the salary for the position was set at $6,000 constitutes a legitimate, nondiscriminatory reason for not offering her a higher salary. In addition, Chen states in her affidavit that when Plaintiff learned of the $6,000 salary, Plaintiff told her that the salary was too low and asked Chen to stop processing her job application. Plaintiff's voluntary decision to withdraw her application based on a set salary that was too low constitutes a legitimate, nondiscriminatory reason for Defendants' not hiring her.

---

[6] Defendants first argue that Plaintiff cannot establish the third element of the prima facie case because SLLIS "extended her an offer of employment." (Doc. 84, at p. 5). However, Defendants' own evidence—Lydia Chen's affidavit—shows that SLLIS did *not* offer Plaintiff a position. (Chen Aff. ¶ 30). Thus, Defendants' own evidence shows that Plaintiff "was not hired," and thus Plaintiff has at least arguably established this element.

Defendants also argue that Plaintiff cannot establish the fourth element of the prima facie case, pointing to the statement in Chen's affidavit that SLLIS did not hire anyone to fill the position Plaintiff applied for in the 2013-2014 school year. However (as Plaintiff points out), Defendants represented to the Court in a response to one of Plaintiff's motions to appoint counsel that "SLLIS actually hired another female, Chinese candidate for the position that Gao applied for . . ." (Doc. 58, at p. 2). The age of this person was not mentioned. Defendants have offered no explanation for the discrepancy between their prior representation and the representation in Chen's affidavit.

Thus, the burden shifts to Plaintiff to produce evidence sufficient to raise genuine issues of material fact regarding whether Defendants' asserted reasons were mere pretext for discrimination. This evidence must be sufficient to support a finding "that the employer's stated reason was false and that age discrimination was the real reason." *Tusing*, 639 F.3d at 516. Plaintiff has not met this burden. Plaintiff attempts to dispute Chen's assertion that the salary was fixed at $6,000 by asserting that Chen originally offered her $16,000 and then reduced it after learning of her age. However, as discussed above, Plaintiff's unsworn allegations do not constitute evidence at the summary judgment stage. Plaintiff also cites a handwritten document that includes on it the number $16,000, in addition to several other numbers and descriptions of job duties. However, there is nothing in that document to suggest that the $16,000 number corresponds to the job Plaintiff was applying for, or indeed to any available job.

Plaintiff also denies that she withdrew herself from consideration for the position, claiming instead that she *accepted* the position at $6,000 per year, only to have Chen later rescind the offer. In addition to her own unsworn and unsupported allegations, Plaintiff submits a piece of paper, apparently in Chen's handwriting, that contains various words and numbers, including "360 minutes," "300 minutes instructional time," "$6000," and "0.15." (Doc. 105-1, p. 12). Plaintiff also cites a document written by her that states, "My goal of taking this job" and discusses certain goals, as well as a document describing P.E. grade level expectations that she states that Chen gave her. (Doc. 105-1, at p. 14). However, these documents are completely consistent with Plaintiff applying for and considering a job and do not indicate that she ever accepted one. They also do not suggest that Defendants rescinded any offer due to her age. Finally, Plaintiff cites documents showing that Plaintiff held other jobs in the 2012-2014 timeframe that paid less than $6,000 per year. Although this provides some weak support for the

Plaintiff's argument that she would not have rejected a job with a $6,000 salary, it is not sufficient for a reasonable juror to find that she accepted the job, particularly in view of the contradictory evidence in Chen's affidavit that addresses this question directly. For the reasons discussed above, Plaintiff has not met her burden of showing pretext.

Plaintiff has not produced direct or indirect evidence sufficient to create a genuine issue of material fact regarding whether her age was a but-for cause of, or even part of the motivation for, any adverse employment action or failure to hire her. Therefore, Defendants are entitled to summary judgment on this claim. *See Johnson*, 769 F.3d at 612-14 (affirming summary judgment on ADEA claim where Defendant articulated a legitimate, non-discriminatory reason for termination and the plaintiff failed to raise genuine issues of material fact regarding whether the stated reason was pretextual or whether age was the but-for reason for the termination).

### c.    Count III: Age Discrimination Under the Missouri Human Rights Act

Plaintiff also alleges age discrimination under the Missouri Human Rights Act, Mo. Rev. Stat. § 213.055. The MHRA prohibits employers from discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, national origin, sex, ancestry, age or disability." Mo. Rev. Stat. § 213.055.1(1)(a). "[T]he MHRA employs a more lenient standard than the ADEA in determining whether an employee has been discriminated against." *Buehrle v. City of O'Fallon, Mo.*, 695 F.3d 807, 812-813 (8th Cir. 2012). "To survive summary judgment on the MHRA claim, [the plaintiff] must demonstrate that age was a 'contributing factor' in the decision to promote others instead of him." *Id.* "'A contributing factor has been defined as one that contributed a share in anything or has a part in producing the effect.'" *Id.* (quoting *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 867 (Mo. Ct. App. 2009)). *See also Marez v. Saint-*

*Gobain Containers, Inc.,* 740 F.Supp.2d 1057, 1068 (E.D. Mo. 2010).

As discussed above with respect to Plaintiff's ADEA claim, Plaintiff cites no evidence, other than her unsworn and unsupported allegations, to suggest that age played any role in Defendants' employment-related decisions. Because she has no evidence that creates a genuine issue of fact as to whether Plaintiff's age was a contributing factor in Defendants' decisions about what salary to offer her or whether to hire her, Defendants are entitled to summary judgment. *See Buehrle*, 695 F.3d at 813 ("Absent any showing that age of the applicants factored into Seibert's decision, Buehrle has failed to meet his burden under the MHRA, and summary judgment was properly granted on this claim.").

### d. Count II: Racial Discrimination Under Title VII

"Title VII of the Civil Rights Act of 1964 makes it 'an unlawful employment practice for an employer' to 'discriminate against any individual with respect to' the 'terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Vance v. Ball State Univ.*, —— U.S. ——, 133 S.Ct. 2434, 2440 (2013) (quoting 42 U.S.C. § 2000e-2(a)(1)). Although the nature of Plaintiff's racial discrimination claim is somewhat unclear, it appears that Plaintiff is alleging that because she was an immigrant from mainland China, Defendants offered her a salary lower than the salary offered to others for similar positions. She also suggests that Defendants' ultimate decision not to hire her was related to her mainland China national origin.

As with an ADEA claim, a plaintiff may establish a racial discrimination claim under Title VII using either direct evidence or indirect evidence. *E.E.O.C. v. Audrain Health Care, Inc.*, 756 F.3d 1083, 1086 (8th Cir. 2014). Where the plaintiff relies on indirect evidence, the court uses same burden-shifting test used for ADEA claims. *Id.*

Plaintiff has not cited any direct or indirect evidence that suggests that her race or national origin played any role in any employment decision made by Defendants. With respect to direct evidence, Plaintiff offers nothing other than her own unsupported allegation that Chen on one occasion made comments indicating that she viewed people from mainland China as poor and low class. (2d Am. Compl. ¶ 21). As discussed above, Plaintiff cannot rely on these unsworn and unsupported allegations to defeat summary judgment. Moreover, even if these comments were supported by evidence in the record, they do not constitute direct evidence of discrimination because there is no indication that they were related to any employment-related decision made by Defendants. *See Clearwater v. Indep. Sch. Dist. No. 166*, 231 F.3d 1122, 1127 (8th Cir. 2000) (finding that "stray remarks" that show racial animus are not direct evidence of discrimination if they are not sufficiently related to an adverse employment action); *Arnold v. St. Louis Metropolitan Police Dep't Bd. Of Police Comm'rs.*, No. 4:11-CV-01144 CDP, 2013 WL 147843, at *5 n.2 (E.D. Mo. Jan. 14, 2013) (noting that a derogatory remark about African-Americans at a roll call "would undoubtedly be offensive, but it does not constitute direct evidence" for purposes of a Title VII claim).

With respect to indirect evidence, even assuming *arguendo* that Plaintiff could establish a prima facie case of racial discrimination, Defendants have met their burden of showing a legitimate, nondiscriminatory reason for offering her a $6,000 salary: the affidavit of Lydia Chen stating that the salary for the position was set at $6,000 and was not flexible. Defendants have also met their burden of showing a legitimate, nondiscriminatory reason for not hiring Plaintiff: her withdrawal from consideration for the position due to the low salary. As discussed with respect to Plaintiff's ADEA claim, Plaintiff cites no competent evidence sufficient to suggest that Defendant's articulated reasons were false. Moreover, she offers no evidence suggesting that the

offered salary amount or the ultimate decision not to hire Plaintiff were motivated in any way by Plaintiff's race or national origin. Thus, Plaintiff cannot prove that Defendants' reason for offering her $6,000 was a pretext for race or national origin discrimination, and Defendants are entitled to summary judgment on this claim. *See Muor v. U.S. Bank Nat'l Ass'n.*, 716 F.3d 1072, 1077-78 (8th Cir. 2013) ("In light of the lack of evidence showing that discriminatory animus motivated the adverse employment decision" and the defendant's well-documented legitimate reason for the adverse employment action, the plaintiff had not established a material issue of fact concerning pretext and summary judgment on the plaintiff's Title VII claim was proper).

### e.   Count IV: Racial Discrimination Under the MHRA

Plaintiff also alleges racial discrimination in violation of the MHRA, Mo. Rev. Stat. § 213.055. As with age discrimination, to establish a racial discrimination claim under the MHRA, the plaintiff must prove only that race was a "contributing factor" in the employer's decision. *E.E.O.C. v. Con-Way Freight, Inc.,* 622 F.3d 933, 938 (8th Cir. 2010) (citing *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 820 (Mo. 2007)).

As discussed above with respect to Plaintiff's racial discrimination claim under Title VII, Plaintiff has cited no evidence suggesting that Plaintiff's race or national origin played any role whatsoever in Defendants' employment-related decisions. Thus, there is no genuine issue of fact regarding whether Plaintiff's race was a contributing factor in Defendants' decisions about what salary to offer her or whether to hire her, and Defendants are entitled to summary judgment on this claim.

### f.   Count V: Breach of Contract

Under Missouri law, the essential elements of a breach of contract claim are "(1) the existence and terms of a contract; (3) that plaintiff performed or tendered performance pursuant

to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 850 (8th Cir. 2014) (quoting *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010)). "'A valid contract contains the essential elements of 'offer, acceptance, and bargained for consideration.'" *Id.* (quoting *Holmes v. Kansas City Mo. Bd. of Police Comm'rs ex rel. Its Members*, 364 S.W.3d 615, 622 (Mo. Ct. App. 2012)). "[T]he parties' negotiations, proposals, or preliminary steps do not constitute a contract." *American Recreation Prods., LLC v. Tennier Indus., Inc.*, 11 F. Supp. 3d 959, 966 (E.D. Mo. 2014) (citing *Kalivas v. Hauck*, 290 S.W.2d 94, 101 (Mo. 1956)).

Plaintiff alleges in her complaint that SLLIS offered, orally and in writing, to provide her with employment at a salary of $16,000 if she completed certain volunteer work for SLLIS, that she did the volunteer work, and that SLLIS breached the agreement and refused to hire Plaintiff at a salary of $16,000. In addition to her own unsworn allegations, Plaintiff relies on the handwritten document that contains job duties as well as the number "$16,000" and other numbers. Plaintiff also points out that in SLLIS's Answer to Plaintiff's First Amended Complaint, SLLIS admitted that it told Plaintiff it would give her the P.E. teacher position if she did certain volunteer work.[7] Because that answer has been superseded by Defendants' Answer to Plaintiff's Second Amended Complaint (which includes denials of similar allegations), the statements in the earlier answer do not constitute binding judicial admissions; however, the earlier statements can be introduced into evidence. *See Missouri Housing Development Comm'n. v. Brice*, 919 F.2d 1306, 1314 (8th Cir. 1990) ("As a rule, admissions in the pleadings . . . are in the nature of judicial admissions binding upon the parties, unless withdrawn or amended.") (quotation marks omitted); *Sunkyong Int'l., Inc. v. Anderson Land & Livestock Co.*, 828 F.2d

---

[7] This answer was filed in response to a complaint that included only employment discrimination claims.

1245, 1249 n.3 (8th Cir. 1987) ("A pleading abandoned or superseded through amendment no longer serves any function in the case, but may be introduced into evidence as the admission of a party.").

Here, even considering SLLIS's superseded statements as evidence, Plaintiff has failed to cite sufficient evidence from which a reasonable jury could find in her favor on a breach of contract claim. To the extent that Plaintiff argues that Defendants breached a contract to employ her at a salary of $16,000, she has failed to establish the existence of such a contract. Neither the handwritten document cited by Plaintiff nor the statement in SLLIS's superseded answer indicates in any way that Plaintiff was offered a job with a salary of $16,000 per year, or that Plaintiff accepted it. Because Plaintiff has failed to cite evidence showing a genuine issue of material fact regarding the existence or terms of a contract, Defendants are entitled to summary judgment on this claim. *See Patterson v. EFPP, LLC*, No. 4:06CV556 JCH, 2007 WL 2507755, at *6 (E.D. Mo. Aug. 30, 2007) ("[A]lthough Plaintiff repeatedly asserts he entered into a contract with Defendant, he offers no evidence of the contract, other than his own conclusory allegations. The non-existence of a contract is fatal to Plaintiff's claim, and so Defendant's Motion for Summary Judgment on this point must be granted.").

Even assuming that SLLIS's superseded admission could establish that Plaintiff had entered into a contract under which Defendants were bound to offer her employment generally (rather than employment at a $16,000 salary), Plaintiff cannot establish that Defendants breached such a contract. As discussed above, the evidence shows that Plaintiff withdrew *herself* from consideration for the job on her last day of volunteer work. She has no competent evidence that Defendants decided not to offer the job to her as they had allegedly promised.

### g. Count VI: Fraudulent Inducement

In Count VI, Plaintiff alleges that Defendants intentionally misrepresented to Plaintiff that she would be given employment and paid $16,000 per year if she completed certain volunteering requirements at The Chinese School; that Plaintiff relied on this representation when she completed the volunteering requirements and decided to forego other employment opportunities; that Defendants refused to hire her as represented; and that Plaintiff suffered injuries including loss of employment, expenses incurred related to her volunteer work, and emotional injuries.

To state a claim for fraudulent inducement under Missouri law, "plaintiff must establish facts in support of each of the following elements: (1) that [Defendants] made certain material representations to plaintiff; (2) such representations were false when made; (3) that [Defendants] knew the representations were false; (4) that the representations were made with the purpose of deceiving plaintiff; (5) that plaintiff was, in fact, deceived; (6) plaintiff reasonably relied on the representations in [entering the agreement at issue]; and (7) plaintiff suffered damage as a proximate result of the fraudulent misrepresentations." *Bracht v. Grushewsky*, 448 F. Supp. 2d 1103, 1110 (E.D. Mo. 2006) (citing *Trotter's Corp. v. Ringleader Restaurants, Inc.*, 929 S.W.2d 935, 939 (1996)). Although Plaintiff's claim is titled, "fraudulent inducement," it appears to correspond more closely to a claim for "fraudulent misrepresentation." To establish a claim for fraudulent misrepresentation, a plaintiff must prove (1) a false, material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in a manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the representation; (5) the hearer's reliance on its truth; (6) the hearer's

right to rely thereon; and (7) the hearer's consequent and proximately caused injury. *Bohac v. Walsh*, 223 S.W.3d 858, 862-63 (Mo. Ct. App. 2007).

Whether Plaintiff's claim is framed as one of fraudulent inducement or fraudulent misrepresentation, Defendants are entitled to summary judgment because Plaintiff cannot establish the first element of either claim. As discussed repeatedly above, Plaintiff has cited no evidence from which a reasonable factfinder could find that Defendants represented to her that they would give her employment at $16,000 per year if she volunteered at SLLIS. Moreover, to the extent that Plaintiff's claim is that Defendants misrepresented to her that she would be offered employment more generally, she has failed to cite evidence from which a reasonable factfinder could find that such a representation was false when made. As discussed above, the evidence shows that Plaintiff withdrew herself from consideration for the job, and there is no evidence that Defendant never intended to offer her the job.

### h. Count VII: Unjust Enrichment

In her unjust enrichment claim, Plaintiff alleges that she conferred a benefit upon SLLIS by completing certain volunteer activities for the school, and that she conferred that benefit after being assured that she would be given employment upon completion of the volunteer work. She alleges that in equity and good conscience she should be given restitution for her unpaid time and effort.

"'A claim for unjust enrichment has three elements: a benefit conferred by a plaintiff on a defendant; the defendant's appreciation of the fact of the benefit; and the acceptance and retention of the benefit by the defendant in circumstances that would render that retention inequitable.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 854 (8th Cir. 2014) (quoting *Hertz Corp. v. RAKS Hospitality, Inc.*, 196 S.W.3d 536, 543 (Mo. Ct. App. 2006)). The

third element is the most significant and also the most difficult to establish. *Executive Bd. of Mo. Baptist Convention v. Windermere Baptist Conference Ctr.*, 280 S.W.3d 678, 697 (Mo. Ct. App. 2009). To determine whether a defendant accepted or retained a benefit unjustly, a court considers "whether any wrongful conduct by the defendant contributed to the plaintiff's disadvantage." *S & J, Inc. v. McLoud & Co., L.L.C.*, 108 S.W.3d 765, 768 (Mo. Ct. App. 2003).

The Court will assume that Plaintiff conferred a benefit on Defendants when she volunteered at SLLIS and when she did performances at SLLIS and at the Chinese Culture Day at the Botanical Gardens, and that Defendants accepted and appreciated that benefit. However, even Plaintiff describes this as "volunteer" work, and it cannot be inequitable for a non-profit organization to accept and retain work done on a volunteer basis. Moreover, even assuming, *arguendo*, that Defendants told Plaintiff that she would be offered employment if she completed the volunteer work, the evidence shows that she withdrew her own application for employment on the final day of her volunteer work. Under these circumstances, no reasonable factfinder could conclude that it would be unjust for Defendants to retain the benefits of her volunteer work, Defendants are entitled to summary judgment on this claim.

For the above reasons, Defendants have established that there are no genuine issues of material fact regarding any of Plaintiff's claims and that they are entitled to judgment as a matter of law on each claim. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 82) is **GRANTED**. An appropriate Judgment will accompany this Memorandum and Order.

/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of December, 2014.